IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID A. WALDRON AND ASSOCIATES, INC., et al. | ) ) ) | CASE NO. 5:11CV2247 |
| | ) | JUDGE DAVID D. DOWD |
| Plaintiffs, | ) ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | KATHLEEN B. BURKE |
| | ) | |
| LOON, LLC, et al., | ) ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |

This matter is before the Court on the motion to remand filed by Plaintiffs David A. Waldron and Associates, Inc. ("Waldron"), Reeves Energy, LLC ("Reeves"), and J.R. Smail, Inc., formerly known as James R. Smail, Inc. ("Smail") (collectively, "Plaintiffs").  Doc. 16.  Defendants Loon, LLC ("Loon"), Paul E. Yakubik, and Charlotte A. Yakubik (collectively, "Defendants") oppose the motion.  Doc. 19.  The issue presented is whether Defendants properly removed this case on the basis of diversity jurisdiction from the Wayne County Court of Common Please.  For the following reasons, Plaintiffs' motion to remand should be DENIED.

**I.  Background**

This case involves a dispute about the parties' rights and responsibilities under, and the continued enforceability of, an oil and gas lease (the "Lease") encumbering real property located in Byesville, Guernsey County, Ohio (the "Property").  Doc. 24, Amended Complaint ("Amended Complaint"), ¶ 17 and Exhibit. A.  The heart of the dispute is who owns the right to lease the deeper shale rights to the Property.  The original owners of the Property were Delbert and Edna Meighen.  Amended Complaint, ¶ 17.  Defendant Loon now owns the Property and is the successor-in-interest to the Meighens.  Amended Complaint, ¶ 18.  The Yakubik Defendants

1

are the members of Defendant Loon. Doc. 19, Exhibit F, Declaration of Charlotte Yakubik (Yakubik Dec. II"), at ¶ 14.

On March 6, 1969, the Lease was executed between the Meighens and John H. Love (the lessee under the Lease), granting Mr. Love the full oil and gas rights in and to the entire Property (approximately 112 acres). Amended Complaint, ¶ 17. A brief summary of the chain of title to the Property and the Lease is as follows:

- On March 6, 1969, Mr. Love assigned all of his rights as lessee to L & M Gas Company, subject to the reservation of certain overriding royalty interests (the "Reserved ORRI").[1] Amended Complaint, ¶ 20; Doc. 19, Exhibit A, Assignment to L&M Gas.

- On or about August 25, 1969, L & M Gas assigned all of its interest in the Well, subject to the Reserved ORRI and the landowner's 12.5% royalty interest, to the following eleven individuals and trust (the "L & M Assignment"): Harrison Eiteljorg (12.5%), Richard Lockton (12.5%), Dudley Sutphin (12.5%), Samuel R. Sutphin (12.5%), Henry R. Warren, Jr. (12.5%), W.J. Holliday (6.25%), Jeanette Holliday (6.25%), T.E. Grinslade (6.25%), Charles Sebring (1.5625%), the Figge Trust (10.3125%), and Edward Gallagher (6.875%).[2] Amended Complaint, ¶ 26.

- On or about August 11, 1972, Waldron obtained assignments from 8 out of the 11 assignees under the L & M Assignment (the "Waldron Assignment"). Amended Complaint, ¶ 31. There are no assignments on file in the Guernsey County Recorder's Office for Samuel R. Sutphin, Charles Sebring, or the Figge Trust. Amended Complaint, ¶ 38. Plaintiffs allege that such assignments were made, but not recorded, and that all interests in the Well and Lease, subject to the Reserved ORRI and the landowner's 12.5% royalty interest, were assigned to Waldron. *Id.*

- On January 6, 2005, "David A. Waldron and Lynette Waldron" assigned their interests in the Lease to Plaintiffs Reeves and Smail. Doc. 19, Exhibit D, Assignment.[3]

---

[1] The Reserved ORRI were a $1/32^{nd}$ overriding royalty interest to John H. Love and another $1/32^{nd}$ overriding royalty interest to James Lawrence Coates.

[2] There is a dispute as to whether L&M Gas assigned only a working interest in the Well, or all its right, title and interest under the Lease and in the Well. *Compare* Amended Complaint, ¶¶ 27-29 *with* Doc. 19, pp. 2-3.

[3] It is unclear how the interest in the Lease that David A. and Lynette Waldron purported to assign to Plaintiffs Reeves and Small arose.

2

Plaintiffs also allege that Ohio L & M Co., Inc., was the successor in interest to, and was effectively the same business as, L & M Gas Company.  Amended Complaint, ¶ 42.  Plaintiffs further assert that, on or about December 28, 1987, the Alliance Petroleum Corporation ("Alliance Petroleum), purchased all of the shares of the Ohio L & M Co., Inc., also known as "L & M Gas Company" and/or "L & M Gas Co."  Amended Complaint, ¶ 44.  Plaintiffs therefore aver that any interest in the Lease, the Well, or the Property that was owned by L & M Gas Company, L & M Gas Co., and/or the Ohio L & M Co., Inc. was transferred and assigned to Alliance Petroleum.  Amended Complaint, ¶ 45.

Plaintiffs allege that, on or about December 27, 2011, Alliance Petroleum assigned its right, title, and interest in the Lease and the Well to Waldron.  Amended Complaint, ¶ 46, and Exhibit D, Assignment.  Plaintiffs thus assert that they own all of the oil and gas rights to the Property.  Amended Complaint, ¶¶ 19, 91, 94.

As is common in the oil and gas industry, the term of the Lease continues for as long as oil and gas is produced from the Property.  Amended Complaint, Exhibit A.  Sometime between 2006 and 2008, a dispute arose between Plaintiffs and Defendants as to the continued validity of the Lease.  *See generally*, Amended Complaint, ¶¶ 53-58; Doc. 7, Exhibit A, Declaration of Charlotte Yakubik (Yakubik Dec."), at ¶ 3.  Plaintiffs state that the Well began experiencing down-hole pump problems in early 2009 and that Waldron had to wait until April to perform service on the Well.  Amended Complaint, ¶ 59.  Plaintiffs allege that, until early 2009, oil and gas had been produced from the Well.  Amended Complaint, ¶ 59.  Defendants dispute this assertion and allege that the well stopped production in November 2008.  Yakubik Dec. at ¶ 4. In any event, Plaintiffs state that, in April 2009, Defendants wrongfully denied Plaintiffs access to the Property, making it impossible for Plaintiffs to repair the well.  Complaint, ¶¶ 59-61.

On May 6, 2009, Loon declared a default by Waldron under the lease because the Well had stopped producing oil and gas.  Amended Complaint, ¶ 62.  Plaintiffs disputed the default and demanded access to the Property to make the necessary repairs to the Well.  Amended Complaint, ¶¶ 63-69.  Defendants never granted Plaintiffs access to the Property.  Amended Complaint, ¶ 70.  On August 3, 2011, Loon served notice on Plaintiffs of its intent to file an Affidavit of Forfeiture of the Lease pursuant to Ohio Rev. Code § 5301.332 (forfeiture and cancellation of natural gas and oil land leases) with the Guernsey County Recorder.  Amended Complaint, ¶ 71; Yakubik Dec. at ¶ 4.  Loon cited as grounds for termination of the Lease that: (a) the Lease is expired, since no oil and gas has been produced from the land since November of 2008; (b) Plaintiffs failed to pay delay rentals for gas not used or sold for a period of one year; and (c) Plaintiffs failed to make timely payments to Defendants for oil produced.  Yakubik Dec. at ¶ 5.  In response, sometime in late September, 2011, Plaintiffs filed an Affidavit Giving Notice that Oil and Gas Lease is not Forfeited with the Guernsey County Recorder.  Yakubik Dec. at ¶ 6; Doc. 19, Exhibit E, Affidavit Giving Notice that Oil and Gas Lease is not Forfeited.

On September 15, 2011, Plaintiffs filed their Complaint in the Court of Common Pleas for Wayne County, Ohio.  Doc. 1, Exhibit A, Complaint.   Plaintiffs asserted the following claims against Defendants: breach of contract, unjust enrichment, tortious interference with contract, declaratory judgment, and to quiet title.  Complaint, pp. 6-10.  On October 20, 2011, Defendants removed the case, citing diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Doc. 1.  On October 27, 2011, Defendants filed a counterclaim against Plaintiffs for a judgment declaring the Lease to be forfeited, seeking a quieting of title as to the Property, and for damages against Plaintiffs for clouding title to the Property.  Doc. 8.

4

On January 24, 2012, Plaintiff filed an Amended Complaint, adding new-party Defendant(s) Frances Sebring, The Figge Trust, and Samuel R. Sutphin. Doc. 24. To date, none of the three new Defendants has appeared in the case.

## II. Law & Analysis

### A. Standard for Removal

Federal courts have limited subject matter jurisdiction. "[T]he intent of Congress drastically to restrict federal jurisdiction in controversies of diverse citizens has always been rigorously enforced by the courts." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S. Ct. 586, 82 L. Ed. 845 (1938). Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. §§ 1441(a) and 1441(b). Federal courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States under 28 U.S.C. § 1331 and of disputes between parties who are citizens of different states if the value of the controversy exceeds $75,000 under 28 U.S.C. § 1332.

A defendant seeking removal on the basis of diversity jurisdiction has the burden of proving by a preponderance of the evidence that the complete diversity and amount-in-controversy requirements are met. *See, e.g., Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993), *overruled on other grounds by Hertz Corp. v. Friend*, __ U.S. __, 130 S.Ct. 1181, 1193, 175 L.Ed.2d 1029 (2010). The right of removal is determined by review of a plaintiff's pleading at the time of the petition for removal. *Ramski v. Sears, Roebuck, & Co.*, 656 F. Supp. 963, 965 (N.D. Ohio 1987). "A court may, however, look at subsequent pleadings and proceedings in a case … to the extent that they 'shed light on the facts as they existed at the outset of the litigation and on the actual interests of the parties.'" *Hrivnak v. NCO Portfolio*

*Mgmt.*, 723 F. Supp. 2d 1020, 1024 (N.D. Ohio 2010) (*citing American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 151 n. 3 (7th Cir. 1981)). Indeed, a district court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990) (citations omitted). The removal petition is to be strictly construed, and the district court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non-removing party. *Coyne v. American Tobacco Co.,* 183 F.3d 488, 492 (6th Cir. 1999).

**B.     The Amount in Controversy Requirement is Satisfied**

The primary issue in this matter is whether the amount in controversy exceeds the $75,000 jurisdictional requirement. Plaintiffs contend that Defendants' removal is inadequate because they have not established that the amount in controversy requirement is satisfied. Contrary to this argument, Defendants have established that the amount in dispute satisfies the jurisdictional requirement.

"[W]here plaintiffs seek 'to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden when it proves that the amount in controversy 'more likely than not' exceeds $75,000." *Everett v. Verizon Wireless*, 460 F.3d 818, 822 (6th Cir. 2006), *quoting Gafford*, 997 F.2d at 158. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.,* 621 F.3d 554, 560 (6th Cir. 2010) (quoting *Hunt v. Wash. State Apple Adver. Comm'n,* 432 U.S. 333, 347 (1977)) (internal quotations omitted). The Sixth Circuit "has yet to decide whether [it] view[s] the amount in controversy from the perspective of the plaintiff or the defendant." *See, e.g., Northup Properties, Inc. v. Chesapeake Appalachia,*

*L.L.C.*, 567 F.3d 767, 770, n. 1 (6th Cir. 2009); *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 829 (6th Cir. 2006) (noting the controversy).

Here, Plaintiffs have asserted claims for breach of contract, unjust enrichment, tortious interference with contract, declaratory judgment, and to quiet title against Defendants.  Amended Complaint, pp. 11-14.  Because Plaintiffs seek to recover an unspecified amount, Defendants need only show that it is more likely than not that the amount exceeds $75,000 in order to meet the federal jurisdictional amount.  In considering that amount and the "object of the litigation," courts do not look merely at the damages or relief to be awarded; they also consider the practical, future economic effects of the outcome of the case.  *See, e.g. Wright v. Sand Canyon Corp.*, Case No. 5:10cv2188, 2011 WL 1792815, at *2 (N.D. Ohio May 11, 2011).  Based on the value of the leasehold estate, Defendants have satisfied their burden in this case.

The object of this litigation is the future use of, and income from, the Property.  The Amended Complaint makes clear that Plaintiffs assert that they own the entire mineral interest in the Property.  Amended Complaint, ¶¶ 19, 91, 94.  Indeed, paragraph 94 of the Amended Complaint states:

> Plaintiffs are entitled to a judicial declaration that they own the oil and gas rights to the Property and that the Lease is a valid and legally binding oil and gas lease, fully encumbering all oil and gas rights in and to the Property, and that Plaintiffs are entitled to access the Property to maintain the Well.

Amended Complaint, ¶ 94.  Based on this assertion, Plaintiffs filed an affidavit with the Guernsey County Recorder giving notice that they have not forfeited the oil and gas lease for the Property.  By filing this affidavit, Plaintiffs have clouded the title to the entire Property, hindering Defendants' ability to re-lease the Property.  In her declaration, Ms. Yakubik states that, if the clouds on the title of the Property are removed, Defendants have the opportunity to re-lease the Property to a new energy company at a significant profit.  *Id.* at ¶ 4.  Ms. Yakubik

further states that "Defendants have had discussions with a potential new lessee, which has offered a significant amount of money per acre for a new lease on the Property.  The value of this new lease to the Defendants would be in excess of several hundred thousand dollars."  *Id.* at ¶ 5.

Based on this evidence, the value of the Lease more likely than not exceeds $75,000.  If Plaintiffs prevail in this matter and are found to own all of the oil and gas rights to the Property, as they assert in their claim for declaratory relief, they will then be able to lease or sell the oil and gas rights to the Property for a significant amount, well in excess of $75,000.  The same would be true for Defendants if they are found to own the oil and gas rights to the Property.  As such, it is more likely than not the value of the object to this litigation to both Plaintiffs and Defendants exceeds the amount in controversy requirement.

Plaintiffs argue that Ms. Yakubik's declaration is insufficient to establish the value of the mineral rights, which, as the Supreme Court has noted, are notoriously difficult to value. *ASARCO, Inc. v. Kadish,* 490 U.S. 605, 628 n. 3, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989). Plaintiffs suggest that, based on *Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770, n. 1 (6th Cir. 2009), Defendants are required to produce expert testimony and a thorough analysis of the various factors influencing the profitability of mineral leases in order to establish that the jurisdictional amount is met.  In *Northup,* the plaintiff claimed that, for nearly forty years, no lessee, including the defendant, marketed either oil or gas from the leased property.  *Id.* at 768.  The plaintiff brought suit in Kentucky state court seeking a judgment declaring the lease null and void.  *Id.*  Chesapeake removed the case to federal court and the plaintiff filed a motion to remand, alleging that the case failed to satisfy the amount in controversy requirement.  *Id.* at 769.  In denying the motion to remand, the district court considered the affidavit of Chesapeake's petroleum engineer, who attested both to the value of

8

the relevant mineral interest's discounted cash flow and to the costs of drilling and extraction. *Id.* The Sixth Circuit affirmed, finding that, based on the affidavit of the petroleum engineer, the defendant satisfied the amount in controversy requirement. *Id.* However, the court did not require expert testimony in every oil and gas lease case. *Id.*

Here, the declaration of Ms. Yakubik is evidence that the value of the object of this litigation exceeds $75,000. Even though Ms. Yakubik is not an expert in the oil and gas industry and does not offer an opinion as to future potential cash flows under the Lease, she does attest to the fact that an interested third party has offered an amount greater than $100,000 for an oil and gas lease of the Property. This is sufficient evidence that the value of the oil and gas rights in the Property - the object of this litigation – is greater than the jurisdictional requirement. Plaintiffs have not contested this evidence or otherwise argued that the actual value of the use of the Property is less than $75,000. Accordingly, Defendants have satisfied their burden of establishing that the amount in controversy more likely than not exceeds the jurisdictional minimum of $75,000.

C.     **The Parties are Completely Diverse**

In their notice of removal, Defendants assert that the Yakubiks are residents of Nevada.[4] Doc. 1, pp. 4-5. Plaintiffs do not dispute Defendants' allegations with regard to the residency of the Yakubiks. Doc. 16, pp. 8-9. Rather, they argue that Defendants have failed to meet their burden of proving the citizenship of the Yakubiks for purposes of diversity jurisdiction. *Id.* In support, Plaintiffs note that Defendants use the term "residents" in their removal petition, not citizenship, and that the petition is therefore deficient because it fails to establish the citizenship

---

[4] It is undisputed that Plaintiffs are all citizens of Ohio. The original parties also appear to agree that the addition of the new Defendants in the Amended Complaint does not destroy, or otherwise affect, the complete diversity of citizenship in this matter. Doc. 26, pp. 2-3; Doc. 30, pp. 1-3. New Defendants Sebring and Sutpfin appear to be citizens of California and Florida respectively. The Trustee of new Defendant The Figge Trust appears to be a citizen of California. Doc. 30. The Figge Trust is the only new Defendant to be served. *See* Docket.

of Defendants. *Id.* Plaintiffs also note that the Yakubiks own the Property and a home located on the Property in Ohio. *Id.* Plaintiff's argument is unpersuasive.

Although Plaintiffs are technically correct about the lack of evidence regarding Defendants' citizenship, they do not claim that the Defendants' assertions regarding their residency are actually wrong. In other words, Plaintiffs do not dispute Defendants' assertions that the Yakubiks are residents of Nevada. In general, if a plaintiff's motion to remand does not take issue with the factual allegations in the defendant's removal notice, the plaintiff "must be taken as assenting to [their] truth, and the petitioning defendant need not produce any proof to sustain [them]." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Because Plaintiffs do not actually take issue with what is stated in the removal petition regarding the Yakubiks' residency, they must be taken as "assenting to its truth," and Defendants "need not produce any proof to sustain it." *Id.* at 97-98.

Plaintiffs also note that the term "residence" does not necessarily mean "domicile" and "citizenship" for purposes of diversity jurisdiction. However, those terms are often used interchangeably. *See, e.g. McDougald v. Miami Valley Hosp.*, Case No. 3:11-cv-00361, 2011 WL 5403649, at *2 (S.D. Ohio Oct. 19, 2011) ("Since multiple parties in this case are residents of Ohio, complete diversity of citizenship does not exist."); *McClure v. Fischer Homes*, Case No. 1:04-cv-433, 2005 U.S. Dist. LEXIS 25735, at *6 (S.D. Ohio Oct. 28, 2005) ("Here, Plaintiffs are residents of Ohio, and Defendant…is an Ohio corporation with its principle (*sic*) place of business in Ohio. Therefore…complete diversity does not exist because the Plaintiffs are citizens of Ohio and one of the Defendants…is a citizen of Ohio."); *Pierce v. Norfolk & Southern Railway Co.*, Case No. 1:05-cv-0190, 2005 WL 1114437, at *2 (N.D. Ohio May 9, 2005) ("Jeffrey Smith, according to the original complaint…is a resident of Ohio. Thus, there are

plaintiffs and one defendant who are citizens of the same state."). The Court will not decide the issue of diversity based on the Defendants' use of the word "resident" versus "citizen" in their notice of removal.

With regard to the actual citizenship of the Yakubiks, it is well established that "[s]tate citizenship for purposes of the diversity requirement [of 28 U.S.C. § 1332] is equated with domicile." *See, e.g., Von Dunser v. Aronoff,* 915 F.2d 1071, 1072 (6th Cir. 1990). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). The two fundamental considerations in establishing domicile for purposes of state citizenship are residence in the state and an intention to remain there permanently. *Napletana v. Hillsdale College*, 385 F.2d 871, 872-73 (6th Cir. 1967). A person can only have one domicile at a time for purposes of diversity jurisdiction; "a previous domicile can not be lost until another is adequately established." *Miller v. Arbors at Gallipolis*, Case No. 07-1295, 2008 U.S. Dist. LEXIS 88902, at *3, 8 (S.D. Ohio Oct. 31, 2008) (citations, internal quotations omitted) (the fact that plaintiff temporarily became a resident of Ohio to receive medical care "is only half of the standard," and defendant's failure to establish that plaintiff "abandoned" her West Virginia citizenship with the intent of staying in Ohio indefinitely rendered plaintiff a citizen of West Virginia).

In this case, Defendants submitted the Declaration of Charlotte Yakubik to support their jurisdictional assertions. Doc. 19, Exhibit F, Yakubik Dec. II. Ms. Yakubik states that she and her husband reside in Nevada, are domiciled in Nevada, and are citizens of Nevada. *Id.* at ¶ 7. She also states that they have owned a home and have permanently resided in Nevada since 1980, and that they both hold Nevada driver's licenses. Yakubik Dec. II at ¶¶ 7-9. Ms. Yakubik

further attests that she and her husband plan to reside (and be domiciled in) Nevada permanently. *Id*. at ¶ 10.  Even though they own the Property and a home located thereon in Guernsey County, Ohio, Ms. Yakubik states that they spend only a few months per year there and do not have any intention to live in Ohio.  *Id*. at ¶ 11.  In addition, Ms. Yakubik states that they have never permanently resided in Ohio; never been citizens of Ohio; never held Ohio driver's licenses; and never paid Ohio state income taxes.  *Id.* at ¶¶ 12-13.  This evidence clarifies the assertions regarding Defendants' citizenship set forth in both the complaint and the notice of removal.  Defendants have therefore sufficiently established that the Yakubiks are citizens of Nevada.

With regard to Loon, the citizenship of a limited liability company is determined by the citizenship of its members.  *Delay v. Rosenthal Collins* Group, LLC, 585 F.3d 1003, 1005 (6th Cir. 2009).  Defendants Paul and Charlotte Yakubik are the only members of Loon.  Doc. 19, Exhibit F, Yakubik Dec. II, at ¶ 14.  As set forth above, the Yakubiks are citizens of Nevada and, as a result, the citizenship of Loon is also that of Nevada.

Based on the foregoing, Defendants are all citizens of Nevada.  Accordingly, the parties are completely diverse.  The Court therefore finds that the notice of removal's statements of complete diversity and Ohio non-citizenship are sufficient to support the Defendants' removal petition.

### III.  Conclusion and Recommendation

For the foregoing reasons, the undersigned Magistrate Judge recommends that Plaintiffs' motion to remand (Doc. 16) should be DENIED.

Dated: April 17, 2012

Kathleen B. Burke
United States Magistrate Judge

12

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).